## RUDD v. NASHVILLE, C. & ST. L. R. CO.

[Abstract Kentucky Law Reporter, Vol. 7—823.]

**Authority of Agent.**

If one is authorized by his principal to do all of his business of a certain kind he is as to it a general agent.

**Instruction and Interrogatories.**

Where one claims to have been employed by an agent and not by the principal, and there is no evidence even tending to show his employment by the principal, an instruction or interrogatory as to any employment by any one else would be improper, for instructions should apply to the case in hand.

**Ratification by Principal of Agent's Acts in Employing Another.**

The principal is liable if he ratifies the unauthorized act of the agent, and if the principal ratifies the act of the subagent he is liable to same as if he had originally employed such subagent, or given the agent the power to do so; and the ratification will often be implied by the acceptance of the benefits arising from the services of the subagent; but such acceptance must be under circumstances implying an obligation to pay for them.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

May 20, 1886.

OPINION BY JUDGE HOLT:

The appellant, James C. Rudd, sues to recover $25,000 for alleged services rendered for the appellee, the Nashville, Chattanooga and St. Louis R. Co., under an alleged contract with it to aid in discovering the holders of the stock of the Owensboro and Nashville R. Co., and in negotiating the purchase of a controlling interest in it. He claims to have been employed by one Falconett, whom the appellee retained and sent to Owensboro, in this state, where the appellant resided, to ascertain, as the testimony shows, the condition and value of the last named road, the names of the stockholders and the price for which a controlling interest in it could be purchased.

The jury returned a special verdict, finding first, that Falconett had been constituted an agent of the appellee to negotiate as to the intended purchase; second, that he had not, however, been

authorized by the appellee to employ the appellant; third, that he did not do so by its authority; and fourth, that the appellant did render service to the appellee by aiding Falconett in the matter.

The lower court also gave several instructions to the jury; and the appellant complains that both by the interrogatories and the instructions the jury were not permitted to consider whether he had been employed by the appellee otherwise than through Falconett, or if he had not been employed by one having authority from the appellee to do so, or had not even been employed at all, yet whether the appellee had accepted the benefit of the services, and by ratification made itself liable for their value. The appellant offered both instructions and interrogatories intended to present these questions to the jury; but the court rejected them, and whether it did so properly is the main question before us.

It clearly appears that Falconett was the agent of the appellee for a particular purpose only. It is true that if one is authorized by his principal to do all of his business of a certain kind he is as to it a general agent; but in this instance while Falconett, according to the findings of the jury, was authorized to negotiate as to the purchase of the stock, yet he had no right to employ the appellant.

It is quite doubtful if the finding that he was empowered to negotiate as to the purchase of the stock is sustained by any evidence whatever. The decided preponderance if not the entire testimony shows that he was merely authorized to investigate the condition of the road, learn who were the owners of the stock, and if it could be purchased and at what price. But in any event the jury did not find that he was authorized to purchase the stock; and even if this finding ought to be upheld, yet the nature of the business intrusted to him was not of such a character as to require others beside himself to perform it; and he can not be regarded as a general agent, with implied power to employ others for the appellee to aid in it.

It appears that the appellant rendered Falconett but little service, unless it be presumed that his influence was thrown into the scale and that it was valuable. None of the officers of the appellee ever recognized him in the transaction, nor did they know that he was aiding Falconett. The latter testifies that what the appellant did was as a personal favor to him. He says that he went

to Owensboro a stranger; that it occurred to him that a relation of his had married a relation of the appellant and that he had upon one occasion met the appellant; that he therefore upon his arrival sought him and requested him to introduce him to the owner of a controlling interest in the stock; that the appellant did so; that, while he took a trip that evening over the road with the owner of the stock, the appellant by his request received from the operator some telegrams for him from the president of the appellee; that by the consent of the appellant he used his name in sending one telegram to a person who was supposed to have some interest in the stock, and that the answer to it was, after he left Owensboro upon the next day, sent to him by appellant; that the latter by his request some days thereafter sent him a telegram, informing him that the owner of the stock would be at Evansville, Indiana, upon a certain day; and that he (Falconett), together with a director of the appellee, met the man there, and the director then purchased the stock.

The testimony of the appellant himself as to the alleged employment by Falconett is not of a satisfactory character. It can not be told from it whether there was an agreement between them that the appellant was employed for the company and was to receive compensation inferential upon the part of the appellant. It was not claimed by the appellant that he had been employed through any one save Falconett; nor is there any testimony tending in the slightest degree to so show; and any instruction or interrogatory as to any employment by any one else would therefore have been improper.

The principal is liable if he ratifies the unauthorized act of the agent; or if the latter without authority, express or implied, employs another for the principal, and the latter ratifies the act of the subagent, he is equally liable as if he had originally employed him or given the agent the power to do so. This ratification will often be implied by the acceptance of the benefits arising from the services of the subagent; but the acceptance must be under such circumstances as imply an obligation to pay for them. Even admitting that the services of the appellant were valuable to the appellee and that they were not rendered to Falconett individually and as a favor to him, yet the appellee did not knowingly accept them; indeed, it can not firmly be said that it accepted them at all. It

sent out its particular agent to perform them, and had no knowledge, until the appellant asserted this claim, that any one had aided him to any extent in the matter.

If it can be properly said that the appellee received the benefit of the services of the appellant, yet he had only done what it had directed its agents to do, and the services of the two were so intermingled that in order not to receive the benefit of the services of the appellant, which had been rendered without its authority or knowledge, it would have been compelled to reject all that Falconett had done, under such circumstances the law will not imply an obligation to pay the appellant. It follows that the lower court did not err in failing to put any interrogatory or give any instruction upon the question of ratification and acceptance by the appellee of what the appellant had done, because there is no testimony even tending to show a state of case which would have authorized them.

Judgment *affirmed.*

*Rodman & Brown, for appellant.*

*Wm. Lindsay, H. W. Bruce, Helm Bruce, Lyttleton Cooke and Lytle Buchanan, for appellee.*

[Cited, *Jones v. Brand,* 106 Ky. 417, 50 S. W. 679.]